UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE K. HUTCHINSON, III,

        Plaintiff,

                                                                                                                Case No. 22-cv-261

-v-

ALLIANCE CNC, LLC, a Delaware Limited
Liability Company, and GWS TOOL, LLC,
a Florida Limited Liability Company, Jointly
and Severally,

        Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail: joey@wrongfullydischarged.com

_____/

# Complaint and Jury Demand

NOW COMES the plaintiff, Freddie K. Hutchinson, III (hereafter "plaintiff"), by and through his counsel, The Niskar Law Firm, PLLC, and for his complaint against the defendants, jointly and severally, hereby states as follows:

## A.  Statement of Jurisdiction

1. The plaintiff is a resident of the County of Montcalm, State of Michigan.

2. Defendant, Alliance CNC, LLC,  is a Delaware limited liability company which maintains a place of business in, and regularly conducts business in the County of Kent, State of Michigan, and thus within the geographic region comprising the Western District of Michigan, Southern Division.

3. The sole member of defendant, Alliance CNC, LLC, is GWS Tool, LLC, which is a Florida limited liability company, and thus a resident of a state other than the State of Michigan.

4. Defendant, GWS Tool, LLC, is a Florida limited liability company, which regularly conducts business in the County of Kent, State of Michigan, and thus within the geographic region comprising the Western District of Michigan, Southern Division.

5. On information and belief, the member(s) of GWS Tool, LLC is/are resident(s) of the State of Florida, and no member is a resident of the State of Michigan.

6. As both defendants maintain a place of business in and/or regularly conduct business in the County of Kent, State of Michigan, this Honorable Court possesses personal jurisdiction over the defendants.

7. Plaintiff alleges violations of the Families First Coronavirus Response Act, Pub. L. 116-127, 134 Stat. 178, *et seq*. (2020) (hereafter "FFCRA"), specifically Division E of the FFCRA designated as the Emergency Paid Sick Leave Act, § 5101-5111, 134 Stat. 195, *et seq*. (hereafter "EPSLA").  Therefore, this Honorable Court possesses original subject matter jurisdiction over plaintiff's federal law claims pursuant to 28 USC § 1331.

8. As there exists complete diversity of citizenship between the plaintiff on the one hand, and the defendants on the other hand, and the amount in controversy exceeds $75,000.00 exclusive of attorney fees and costs, this Honorable Court possesses original subject

matter jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1332.

9. In addition to possessing diversity jurisdiction over plaintiff's state law claims, this Honorable Court possesses jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367.

10. The violations of the FFCRA and state law alleged herein occurred in whole, or in part, in the County of Kent, State of Michigan. Therefore, venue is proper in the United States District Court for the Western District of Michigan, Southern Division, pursuant to 28 USC § 1391.

## B. Factual Allegations

Plaintiff incorporates all prior averments, as if fully set forth herein.

11. Plaintiff was employed by defendants, individually and/or collectively, as a CNC Tool Grinder at their Grand Rapids, Michigan production facility. Plaintiff began his employment on or about March 19, 2018.

12. Plaintiff was qualified to hold and perform his job position, performed his job at or above the defendants' expectations, and his personnel file is devoid of any disciplinary actions or evidence of misconduct.

13. On or about April 13, 2020, plaintiff became ill and experienced symptoms consistent with the COVID-19 virus, specifically including fever, cough, chills, headache and diarrhea. Plaintiff notified his supervisor that he was experiencing such symptoms and his inability to report to work as a result thereof.

14. Due to his symptoms, plaintiff was instructed to quarantine by his health care provider(s), and notified defendants of the same.

15. Ultimately, plaintiff was able to return to work on or before April 27, 2020.

16. On April 24, 2020, defendants notified plaintiff that they were placing him on furlough

reportedly due to the effects the COVID-19 pandemic had on their volume of business. Defendants made the alleged furlough date retroactive to April 7, 2020, despite the fact that plaintiff worked from April 7, 2020 until he experienced COVID-19 symptoms on April 13, 2020.

17. Plaintiff was the only CNC cutting tool grinder who was allegedly furloughed from the defendants' Grand Rapids facility.

18. On May 28, 2020, defendant extended plaintiff's alleged furlough for the given reason of a lack of work.

19. Over the following months, plaintiff inquired into the status of his reinstatement and was repeatedly told by his supervisor, Fred Edmonson, that there was not enough work to warrant reinstating him.

20. Notwithstanding defendants' claims to have furloughed plaintiff due to an alleged lack of work, and their refusal to reinstate plaintiff for the claimed reason of an alleged lack of work, defendants advertised one or more job opening(s) for a CNC cutting tool grinder at their Grand Rapids, Michigan, facility which was publicly posted and active as of October 29, 2020.

21. Defendants terminated plaintiff's employment on November 17, 2020 for the given reason of an alleged lack of work.

22. Notwithstanding defendants' claim to have terminated plaintiff due to an alleged lack of work, defendants advertised one or more job opening(s) for a CNC cutting tool grinder at their Grand Rapids, Michigan, facility which was posted on its company website and active as of November 22, 2020 (five days after plaintiff was terminated).

23. Plaintiff applied for the posted CNC cutting tool grinder job position. Notwithstanding plaintiff's qualification for the job position, his successful performance of the job, and his lack of any history of misconduct or discipline, defendants refused to hire plaintiff for the

position.

24. Notwithstanding defendants' claim to have terminated plaintiff due to an alleged lack of work, on December 10, 2020 defendants' supervisory employee, Brad Walma, posted on social media the existence of one or more job opening(s) for a CNC cutting tool grinder at defendants' Grand Rapids, Michigan, facility and defendants' desire to fill the same.

25. Defendants selected plaintiff for the alleged furlough, refused to timely reinstate plaintiff, terminated plaintiff's employment, and/or refused to rehire plaintiff in whole or in substantial part due to the time plaintiff took off from work as a result of plaintiff experiencing symptoms of COVID-19 and having to quarantine.

### C.  Count I – Violations of the Emergency Paid Sick Leave Act, Pub. L. 116-127, § 5101-5111, 134 Stat. 195, *et seq*., ("EPSLA")

Plaintiff incorporates all prior averments, as if fully set forth herein.

26. Plaintiff was at all pertinent times an eligible "employee" pursuant to the section 5110(1) of the EPSLA, 134 Stat. 198.

27. Defendants were each, individually and/or collectively, an "employer" and a "covered employer" pursuant to section 5110(2) of the EPSLA, 134 Stat. 198.

28. Pursuant to the EPSLA, plaintiff was entitled to, and did take up to 80 hours of protected and paid leave time for, *inter alia*, his experiencing of COVID-19 symptoms and to quarantine upon the advice to do so by a health care provider.

29. Pursuant to the EPSLA, defendants were required to timely reinstate plaintiff into his job position, or a substantially equivalent job position, upon his return from leave.

30. Pursuant to the EPSLA, defendants were prohibited from discriminating against plaintiff, retaliating against plaintiff, refusing to reinstate plaintiff and/or terminating plaintiff's employment due to his taking of EPSLA leave and/or his exercise of rights under the

EPSLA.

31. Defendant engaged in conduct prohibited under the EPSLA, and the regulations promulgated thereunder, including but not limited to:

   a. Denying plaintiff his full leave rights under the EPSLA;
   b. Selecting plaintiff for an alleged furlough in whole or in substantial part due to his taking of leave under the EPSLA and/or exercising rights afforded by the EPSLA;
   c. Refusing to timely reinstate plaintiff into his job position or a substantially equivalent job position following his EPSLA leave;
   d. Terminating plaintiff in whole or in substantial part due to his taking of leave under the EPSLA and/or exercising rights afforded by the EPSLA;
   e. Refusing to rehire plaintiff in whole or in substantial part due to his taking of leave under the EPSLA and/or exercising rights afforded by the EPSLA;
   f. Unlawfully discriminating against plaintiff in whole or in substantial part due to his taking of leave under the EPSLA and/or exercising rights afforded by the EPSLA;
   g. Failing to maintain the plaintiff's employment benefits during the time period required by the EPSLA;
   h. Improperly failing to timely, adequately and appropriately comply with the regulations promulgated under the EPSLA;
   i. Improperly retaliating against plaintiff in whole or in substantial part due to his taking of leave under the EPSLA and/or exercising rights afforded by the EPSLA; and
   j. Wilfully, intentionally, and purposely violating plaintiff's rights under the EPSLA.

32. Pursuant to sections 5102 and 5105(a) of the EPSLA, defendants' violations of the EPSLA constitute violations of section 6 of the Fair Labor Standards Act, 29 USC § 206.

33. Pursuant to section 5104 of the EPSLA, defendants' wilful violations of the EPSLA constitute violations of section 15(a)(3) of the FLSA, 29 USC § 215(a)(3), and subject defendants to the penalties set forth in 29 USC §§ 216 and 217.

34. As a direct and proximate result of the defendants' violations of the EPSLA and the regulations promulgated thereunder, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including all damages set forth in 29 USC §§ 206, 216 and 217, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost,

consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, interest, costs of litigation, attorney fees and liquidated damages equal to the sum set forth in 29 USC § 216(b). Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

35. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to reinstate plaintiff to his former position, compelling defendants to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendants violated the EPSLA in the aforementioned ways, enjoining defendants from further violations of the EPSLA against plaintiff, enjoining defendants from taking any adverse employment action against plaintiff in retaliation for exercising his rights under the EPSLA, and enjoining defendants from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence.  Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, liquidated damages, costs, interest, etc.

### D.  Count II – Violations of the Michigan COVID-19 Employee Rights Act of 2020, MCL § 419.401, *et seq*. ("CERA")

Plaintiff incorporates all prior averments, as if fully set forth herein.

36. Plaintiff was at all pertinent times an "employee" of each defendant, individually and/or collectively, pursuant to MCL § 419.401(c).

37. Defendants were, individually and/or collectively, an "employer" of plaintiff pursuant to MCL § 419.401(d), and a "person" pursuant to MCL § 419.401(I).

38. Pursuant to MCL § 419.405(2), plaintiff was both entitled and required to refrain from reporting to work upon experiencing the principal symptoms of COVID-19, including but not limited to fever, cough, headache, chills and diarrhea, until his isolation period completed and his symptoms improved.

39. Pursuant to MCL § 419.403(1), defendants were prohibited from discharging, discriminating against and/or retaliating against plaintiff for not reporting to work due to the experiencing of the principal symptoms of COVID-19 until his isolation period ended and his symptoms improved.

40. Defendant engaged in conduct prohibited under the CERA, including but not limited to:

   a. Denying plaintiff his full right to time off from work under the CERA;
   b. Selecting plaintiff for an alleged furlough in whole or in substantial part due to his taking of time off from work under the CERA and/or exercising rights afforded by the CERA;
   c. Refusing to timely reinstate plaintiff into his job position or a substantially equivalent job position following the time he took off work due to his COVID-19 symptoms;
   d. Terminating plaintiff in whole or in substantial part due to his taking of time off from work due to his COVID-19 symptoms and/or exercising rights afforded by the CERA;
   e. Refusing to rehire plaintiff in whole or in substantial part due to his taking of time off from work due to his COVID-19 symptoms and/or exercising rights afforded by the CERA;
   f. Unlawfully discriminating against plaintiff in whole or in substantial part due to his taking of time off from work due to his COVID-19 symptoms and/or exercising rights afforded by the CERA;
   g. Failing to maintain the plaintiff's employment benefits during the time period required by the CERA;
   h. Improperly failing to timely, adequately and appropriately comply with the substantive and procedural requirements contained in CERA;
   i. Improperly retaliating against plaintiff in whole or in substantial part due to his taking of time off from work for his COVID-19 symptoms and/or exercising rights afforded by the CERA; and
   j. Wilfully, intentionally, and purposely violating plaintiff's rights under the CERA.

41. As a direct and proximate result of the defendants' violations of the CERA, plaintiff has

incurred all damages available at law, both past, present and into the future, specifically including all damages set forth in MCL § 419.407, including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, interest, costs of litigation, attorney fees and exemplary damages. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

42. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to reinstate plaintiff to his former position, compelling defendants to retroactively restore plaintiff's seniority rights and/or opportunities for promotion, declaring that the defendants violated the CERA in the aforementioned ways, enjoining defendants from further violations of the CERA against plaintiff, enjoining defendants from taking any adverse employment action against plaintiff in retaliation for exercising his rights under the CERA, and enjoining defendants from taking any adverse employment action against plaintiff except upon a showing of just and good cause by clear and convincing evidence. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, non-economic damages, the value of lost benefits, consequential damages, the costs of any medical care, attorney fees, liquidated damages, costs, interest, etc.

### E. Count III – Violations of Michigan Public Policy

Plaintiff incorporates all prior averments, as if fully set forth herein.

43. On April 3, 2020, Michigan Governor Gretchen Whitmer issued Executive Order 2020-36, pursuant to the Michigan Emergency Management Act, MCL § 30.401, *et seq*. ("MEMA"), and the Emergency Powers of the Governor Act, MCL § 10.31, *et seq*. ("EPGA"), which took effect on that date. Pursuant to Executive Order 2020-36, employees experiencing symptoms consistent with COVID-19 were prohibited from reporting to work, and employers were prohibited from discharging, disciplining or otherwise discriminating against such employees who refrained from reporting to work due to the onset of symptoms consistent with COVID-19.

44. On April 9, 2020, Michigan Governor Gretchen Whitmer issued Executive Order 2020-42, pursuant to the MEMA, and EPGA, which took effect at 11:59 p.m. on that date. Section 10(6) of Executive Order 2020-42 prohibited employees from reporting to work if they displayed symptoms consistent with COVID-19.

45. Violation of an executive order issued under the MEMA was at all pertinent times a misdemeanor, and thus a crime under Michigan law. MCL § 30.405(3).

46. Violation of an executive order issued under the EPGA was at all pertinent times a misdemeanor, and thus a crime under Michigan law. MCL § 10.33(3).

47. Defendants selected plaintiff for an alleged furlough, refused to timely reinstate plaintiff, terminated plaintiff, refused to rehire plaintiff, and otherwise discriminated and retaliated against plaintiff, for the time he did not report to work due to experiencing symptoms consistent with COVID-19. Therefore, defendants violated Michigan's public policy by, in actual practice, taking the aforementioned adverse employment actions against plaintiff because he refused to violate Executive Orders 2020-36 and/or 2020-42, and thus refused to violate the MEMA and/or EPGA.

48.     As a direct and proximate result of the defendants' violations of Michigan's public policy, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including but not limited to lost wages, lost overtime wages, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, non-economic damages including emotional distress and/or mental anguish damages, any incurred medical expenses, interest, costs of litigation, attorney fees and exemplary damages. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

WHEREFORE the plaintiff respectfully prays for judgment against the defendant, jointly and severally, for all damages and liquidated damages available at law, together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

Respectfully submitted,

THE NISKAR LAW FIRM, PLLC

By: /s/ Joey S. Niskar
JOEY S. NISKAR (P55480)
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262

Dated  March 21, 2022                                      E-mail: joey@wrongfullydischarged.com

UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE K. HUTCHINSON, III,

        Plaintiff,

                                      Case No. 22-cv-261

-v-

ALLIANCE CNC, LLC, a Delaware Limited
Liability Company, and GWS TOOL, LLC,
a Florida Limited Liability Company, Jointly
and Severally,

        Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail: joey@wrongfullydischarged.com

_____/

## Demand for Jury Trial

The plaintiff, Freddie K. Hutchinson, III, by and through his counsel, The Niskar Law Firm, PLLC, hereby demands a trial by jury on all issues in this case.

                                                        THE NISKAR LAW FIRM, PLLC

                                                        By: /s/ Joey S. Niskar
                                                        JOEY S. NISKAR (P55480)
                                                        Attorney for Plaintiff
                                                        P.O. Box 252917
                                                        West Bloomfield, MI  48325
                                                        (248) 702-6262
Dated: March 21, 2022                                   E-mail: joey@wrongfullydischarged.com